UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case Number: 9-18-cv-80257-RLR

MABELLE MEYAART
a/k/a MAI MEYAART,

       Plaintiff,

v.

TRAVEL LEADERS GROUP, LLC,
d/b/a and s/k/a TRAVEL LEADERS GROUP,
NINAN CHACKO and JOHN LOVELL

       Defendants.

_____/

## THIRD AMENDED COMPLAINT

Mabelle Meyaart a/k/a Mai Meyaart ("Mrs. Meyaart" and/or "Plaintiff") sues the defendants, Travel Leaders Group, LLC d/b/a and s/k/a Travel Leaders Group ("Travel Leaders Group") and Ninan Chacko ("Mr. Chacko") and John Lovell ("Mr. Lovell") (collectively, "Defendants") (Mrs. Meyaart and Defendants are hereinafter referred to as the "Parties") and states:

### General Allegations

1.      This is an action for monetary and other relief within the subject matter jurisdiction of this Honorable Court based on various claims including, but not limited to, violations of the federal Equal Pay Act, the Florida's Equal Pay Act, negligent retention, and tortious interference, the federal Civil Rights Act, Title VII, the Lilly Ledbetter Fair Pay Act of 2009, and the Florida Civil Rights Act, Chapter 760, Fl.Stat.

2.      Defendants removed this action from state court.

3.      At all times material hereto, Mrs. Meyaart was an employee of Travel Leaders Group in the State of Florida.

4.      At all times material hereto, Mrs. Meyaart worked in and for Defendant Travel Leaders Group in and from the State of Florida.

5.      At all times material, Mrs. Meyaart has been and still is a resident of Palm Beach County, Florida.

6.      Travel Leaders Group touts itself on its website as "America's largest travel agency company" as follows:

> The Undisputed Leader in Travel
>
> … Travel Leaders Group delivers a high-touch, personal level of travel expertise to leisure and corporate clients through our more than 7,000 company-owned, franchised and affiliated travel agencies throughout the United States, Canada, the United Kingdom, Ireland and Australia. The travel agencies that are part of Travel Leaders Group alone comprise over 30% of all agencies in North America. Our team of <u>leaders</u> – from our expert agents to our executives — are dedicated to delivering the best travel experience. It's our heart and soul. It's all we do. And we do it for you!

and as:

> a leading North American travel company that directly employs over 2,000 staff managing operations of more than 7,000 company-owned, franchised and affiliated travel agency locations in the United States, Canada, the United Kingdom, Greece, Ireland and Australia. Today, Travel Leaders Group has over 40,000 travel agents working directly for the organization or under one of its brands.

7.      Defendant, Ninan Chacko ("Mr. Chacko") is the CEO and an employee of Travel Leaders Group.

8.      Defendant, John Lovell ("Mr. Lovell"), is the President and an employee of Travel Leaders Network and Leisure Group, which is part of Travel Leaders Group, and is a resident of Florida.

9.      At all times material, Mr. Chacko and Mr. Lovell acted within the course and scope of their employment, agency and association with Travel Leaders Group so as to bind Travel Leaders Group because of their actions.

10.     This Court has long-arm jurisdiction over Defendants including, but not limited to, pursuant to Fla. Stat. 48.193, including, but not limited to, subsection (1)(a) 1,2,4, 6a, and 7.

11.     This Court has long-arm jurisdiction over the Individual Defendants including, but not limited to, pursuant to Fla. Stat. 48.193, including, but not limited to, subsection (1)(a)(2).

12.     At all times material, Defendants were engaged in substantial and not isolated activity within this State.

13.     Defendants have had sufficient minimum contacts within the State of Florida such that the maintenance of this suit will not offend traditional notions of fair play and substantial justice. The acts complained of were performed or occurred, at least in part, in the State of Florida. The business conducted by Defendants and the services rendered by Mrs. Meyaart in the State of Florida was such that Defendants should have reasonably anticipated being hauled into court in Florida. The actions of the Defendants affected Mrs. Meyaart in Florida.

14.     The offending conduct of the Individual Defendants (Mr. Chacko and Mr. Lovell) caused Mrs. Meyaart injury in Florida, thereby satisfying Florida's Long Arm Statute because they each committed a tort (tortious interference) which injured Mrs. Meyaart in Florida from where she worked for Travel Leaders Group. These Defendants were involved in her termination and they knew or should have known that Mrs. Meyaart would be damaged in Florida by her termination, which was the result of their actions.

15.     Mrs. Meyaart has been in the travel industry more than 20 years developing hotel strategies.

16.     Mrs. Meyaart was employed by Travel Leaders Group from about June 25, 2012 until she was unceremoniously and wrongfully terminated without cause under false pretenses supposedly because of a bogus "elimination of her position" in or around July 24, 2017.

17.     Initially, Mrs. Meyaart had been brought into Travel Leaders Group to create the Hotel Division, its Hotel teams, strategic partnerships, revenue and product strategies, analytics, infrastructure, commercial agreements, agent engagement strategies and its hotel products.

18.     Mrs. Meyaart held a number of positions over that time, including, but not limited to, the following:

        A.     Senior Vice President, Hotel Strategies;

        B.     Vice President, Worldwide Hotel Program Strategies; and

        C.     Vice President, Engagement and Distribution Strategies.

19.     When Mrs. Meyaart was first hired, she was positioned as a Senior Vice President, given a business card that said as much and was featured in one or more company press releases as a new Senior Vice President.

20.     Notwithstanding all that, she was treated internally as a Vice President, labeled as such and paid at a level much less than other SVPs, in terms of having a contract for a term, higher base pay, higher bonuses, and other greater benefits.

21.     Although Mrs. Meyaart was held out to the world as a Senior Vice President, she was given the responsibilities of, and performed as, a Senior Vice President in starting up the Hotel Division.

22.     Mrs. Meyaart was effectively demoted and made a Vice President and never promoted thereafter. She never had her salary increased. When openings existed for the Senior Vice President position, she was passed over in favor of men some or all of whom had much less experience as she had in Hotels.

23.     Travel Leaders Group did little, if anything, to train or groom Mrs. Meyaart to position her so that she could be considered for a Senior Vice President opening or position.

24.     Mrs. Meyaart's duties, without exclusion, were to:

    A.    develop the engagement strategies to increase adoption of the various hotel programs and tools offered by Travel Leaders Group;

    B.    hire, develop and direct the team of Engagement Managers and Sales Coordinator;

    C.    lead and support the Customer Service team out of Montevideo, Uruguay;

    D.    develop and manage the commercial relationships with third party suppliers;

    E.    speak and present to thousands of agents during national annual conferences;

    F.    among numerous other significant duties.

25.    Mrs. Meyaart performed her duties, and more, with distinction.

26.    During her employment, Mrs. Meyaart built award-winning programs, such as, without exclusion:

    A.    Worldwide Hotel Program;

    B.    Select Hotels & Resorts Program;

    C.    pinSIGHT; and

    D.    three merchant rate offers: Friends and Family rate, 15% Commission rate and Flex Mark Up rate.

27.    Through her leadership, expertise, initiative, dedication and hard work, Mrs. Meyaart grew EBITDA in the Hotel Division from less than $X million to more than $Z million in 4 years (a 400% increase)[1].

28.    Mrs. Meyaart achieved consistent high levels of success and achievement at Travel Leaders Group.

---

[1] The actual numbers are redacted at this time.

29.     Among other examples, Mrs. Meyaart was recognized by Barry Liben, former CEO and current Board member, that Mrs. Meyaart was responsible for the success of the Hotel Division.

30.     The Financial Controller, Catharina Suryaatmadja, who was privy to all the financial information and individuals' revenue contribution and compensation, also recognized Mrs. Meyaart was the reason behind the success of the Hotel Division.

31.     Mrs. Meyaart received communications from Michael Heflin, her immediate supervisor, stating that the team of which she was a part and Mrs. Meyaart were performing great and that they were in the right roles to continue to drive growth.

32.     Mrs. Meyaart also received a note from Mr. Chacko including her in a special options program extended to the most valued employees.

33.     Notwithstanding her performance and achievements, Travel Leaders Group, itself, and through its employees and agents acting within the course and scope of their employment and agency, did the following in relation to Mrs. Meyaart:

      A.     Committed discrimination against her;

      B.     Committed harassment against her;

      C.     Created a hostile work environment;

      D.     Committed acts of retaliation against her;

      E.     Failed to inform her that positions were open for which she could apply;

      F.     Failed to consider her for open positions;

      G.     Asked her if she was interested in open positions and then failed and refused to consider her for those positions;

      H.     Passed over her for open positions in favor of less qualified, inexperienced, males from outside Travel Leaders Group;

      I.     Paid males holding inferior positions as much as Mrs. Meyaart was paid;

J.     Paid Mrs. Meyaart less than males holding comparable positions;

K.     Failed to pay her salary increases;

L.     Failed to promote her;

M.     Demoted her;

N.     Defamed her, including, but not limited to, stating and repeating that she was not a "team player;"

O.     Propositioned and solicited her to engage in sexual relations (which she declined);

P.     Failed to provide her with benefits provided to males at Travel Leaders Group;

Q.     Fired her and lied about eliminating her position and did not consider her for another position in the Company, while at the same time hiring a male for an open position that she was qualified to fill;

R.     Defamed her by, among other things, telling Travel Leaders Group's employees and people outside of Travel Leaders Group that the reason Mrs. Meyaart was terminated was because she was not a team player and because of problems with her performance, including, but not limited to, that mistakes and errors were found and that they questioned Mrs. Meyaart's ability to competently perform her job within the travel industry; and

S.     Among numerous other Wrongful Actions and failure to act.

(collectively, the "Wrongful Actions")

34.     Mrs. Meyaart was promised larger roles in Travel Leaders Group including, but not limited to, by Mr. Lovell in a private meeting on Feb 7, 2017 and, again, in a meeting on June 20, 2017, with eight of her colleagues present who witnessed these statements.

35.     At times, Travel Leaders Group conducted what they referred to as a "reorganization" or the "integration" of one working group/division into another. When such references were made, Mrs. Meyaart was reassured and told by management that there were several significant positions in the Company for which she was being considered as well.

36.     On a number of occasions, Mrs. Meyaart requested to be considered formally to be promoted, including, but not limited to, to be promoted to a Senior Vice President position, but she was rebuffed.

37.     Notwithstanding her proven track record of success and competencies, Mrs. Meyaart was, at various times, passed over for promotions, demoted, underpaid, had bonuses reduced over time without justification, denied salary increases, denied equal pay, defamed, unfairly criticized, propositioned for sex, harassed, and ultimately wrongfully terminated without cause, etc. (the "Mistreatment").

38.     Ms. Meyaart was never informed by Travel Leaders Group of the real reason for the Mistreatment.

39.     Ms. Meyaart experienced the Mistreatment as just one female employee of many others similarly situated.

40.     Mrs. Meyaart was told that she was being terminated because, supposedly, there were no other roles available to her.  That was repeated to her by Mr. Lovell in a call he had with Mrs. Meyaart on July 25, 2017. The day before, on July 24th, David Gross, a male, was announced as being hired as the new Senior Vice President of Strategic Partnerships, a role that was not posted for which Mrs. Meyaart was qualified to fill and for which she was not interviewed.

41.     When she was terminated without cause Mrs. Meyaart was never informed why Travel Leaders Group selected her position to eliminate, as opposed to the position of a male or someone else.

42.     When she was terminated without cause Mrs. Meyaart was never informed why Travel Leaders Group couldn't or didn't find another position for her in the Company.

43.     Similarly, Mrs. Meyaart was never informed why males from outside the Company with much less experience that she had were hired for positions she was more than qualified to fill.

44.     Mrs. Meyaart was never informed why males with much less experience than she had were paid the same or more than she was paid to perform the same or greater duties. More particularly, new hires on the Hotel Team, Patrick O'Neil (Sr. Director) (a male in his 40's) and Art Jimenez (VP Marketing) were being paid a nominal few dollars[2] less annually than what Mrs. Meyaart was being paid. By contrast, a female in her 50's was hired in 2015 as Senior Director at about $40,000 less than those new male hires. When Mrs. Meyaart asked why these new male hires were paid as much as her even though they were filling much less senior roles than she, she was given no explanation or justification other than it had been Eric Rodriguez's decision. Those hires occurred as Mrs. Meyaart experienced going five years with no increase in her salary, despite her being lauded for her performance and even though she had created the Travel Leaders Group Hotel Division, hired the team, created their hotel programs and grew Hotel Division EBITDA from less than $X to over $Z (four times as much)[3], for which she received no raise in the 5 years before her termination, despite her success and having positive reviews.

45.     The reason given to Mrs. Meyaart for her termination without cause was pretextual. She had been given no advance notice, of any kind, that her role or future with Travel Leaders Group was being questioned. Several officers and members of the Board of Directors expressed shock that Mrs. Meyaart was summarily terminated. Mrs. Meyaart was given no opportunity to fight for her job and be considered for any other position within her entire organization. It was obvious that she was forced out of Travel Leaders Group for malevolent and unjustified reasons.

---

[2] The actual numbers are redacted at this time.
[3] The actual numbers are redacted at this time.

46.     Mrs. Meyaart's Mistreatment was a manifestation of Travel Leaders Group's warped corporate culture (the "Travel Leaders Group Warped Culture") that can be described, generally, as toxic, male-dominated, good 'ole boy, misogynistic, and dysfunctional, which victimized and discriminated against women.

47.     The Travel Leaders Group Warped Culture is well known in and throughout the travel industry, including, but not limited to, vendors of Travel Leaders Group, among others knowledgeable of Travel Leaders Group's inner workings.

48.     The Travel Leaders Group Warped Culture is also well known among key executives, Board members, industry vendors and suppliers, and others, including, but not limited to:

    A.   Bob Brill, SVP and General Counsel (who is also aware of the disparity and discriminatory practices in Travel Leaders Group, the success of the Hotel Division under the leadership of Mrs. Meyaart, the Mistreatment (defined herein), and the Wrongful Actions (defined and identified below) and other matters;

    B.   Kris Parkin, Vice President of Human Resources (who is also aware of the various complaints Mrs. Meyaart has raised. She sets policy on compensation and benefits.  She is aware of aware of the compensation disparity and unequal pay and benefits. She approves of role requirements, pay grade and issues compensation and benefits offers to incoming employees.  She was aware of Mrs. Meyaart's creation of the Hotel Division and her history of successful leadership and revenue generation.  She was also aware of Mrs. Meyaart's interest in the SVP role. She did not interview Mrs. Meyaart for various roles that became open. She was aware that Mrs. Meyaart never received a raise and that Mrs. Meyaart paid for all of her healthcare benefits, whereas there were

other executives who had their benefits subsidized). She is aware of the Mistreatment and the Wrongful Actions. She also witnessed and received complaints (including, but not limited to, from Mrs. Meyaart) about pervasive sexual harassment and many discriminatory statements made by, and discriminatory actions taken by, officers and executives and either ignored them or did little, if anything, about them);

C.   Catharina Suryaatmadja, Financial Controller (who was also aware of all employees' compensation in the Hotel Division and discrimination in pay in the Company.  Catharina is also aware of the success of the Hotel Division under Mrs. Meyaart's leadership and other matters).

D.   Ninan Chacko, CEO (who is aware of the allegations in this Complaint, the Mistreatment and the Wrongful Actions, among other matters).

E.   Michael Heflin, Senior VP of the Hotel Division (who was informed of and was aware of the disparities in compensation and other matters and aware of the Mistreatment and the Wrongful Actions);

F.   John Lovell, President of the Hotel Division (who was informed of and was aware of the disparity in compensation. Mr. Lovell is aware of solicitations of sex that have occurred in the Company and suggestive comments made to female employees, the allegations of the Complaint, the Mistreatment and the Wrongful Actions and other matters);

G.   Various members of the Board who can be identified and confirmed through discovery and continuing investigation; and

H.   "Me too" additional victims.

49.   Mrs. Meyaart, as a woman, was excluded from activities and exposure and career development that would likely have made it possible for her to advance at TLG and in the travel

industry. Instead, her growth and development was thwarted and limited because she was a woman and wasn't part of the good 'ole boy Warped Corporate Culture.

50.     As just one example, various male-only members of upper management at TLG participated in what was referred to by some as the "Godfather Stripper Dinners (or 'Parties')" at which very senior male-only members of various major airlines were treated to private dinners at an Italian restaurant where female strippers appeared to provide various forms of entertainment. Mrs. Meyaart and other women at TLG were excluded. To the extent such events contributed to the relationships between male executives at TLG with male management at very important business partners/clients, and females at TLG were excluded from having business development opportunities, including, but not limited to Mrs. Meyaart, those women were professionally and economically disadvantaged and handicapped.

51.     In another illustrative event, a Travel Leaders Group's affiliate, featuring its CEO/President, Barry Liben, conducted a shameless event parodying the song, "Love Shack," and highlighted staff in risqué sexually focused costumes, a female dominatrix in tights with a whip on a conference room table, and a male and female employee coming out of a company ladies room with the man pulling up his zipper. This video was posted on YouTube.

52.     In another instance, belly dancers danced with company employees, including Erick Rodriguez, who was hired over Mrs. Meyaart, and paid a year's severance at a higher salary amount for one year of service when he was let go (much more than what Mrs. Meyaart was offered for 5 years of successful performance when she was fired without cause).

53.     Personal male friends of management with little, if any, experience were hired to fill important roles without openings being publicized so that women like Mrs. Meyaart inside the Company couldn't be considered. On the occasions when women like Mrs. Meyaart were informed of opportunities for advancement, they were passed over without actual consideration.

54.     Hiring and other employment practices favored men over women.  Some positions were never posted.  That gave Mr. Chacko carte blanche to place his male friends into positions without giving a chance to others who were more experienced, older and/or female and who were already in the Company. This was often acknowledged and discussed at the Executive level and was a continuous practice.

55.     Some examples of discriminatory hiring and employment decisions, without exclusion, were as follows:

A.  SVP Hotel Division role – In October 2015, Mr. Chacko came on Board as the new CEO.  In the Fall of that year, he brought in a new SVP of the Hotel Division, Eric Rodriguez, his personal friend (male 40's).  That SVP position was never posted and Ninan Chacko never spoke with Mrs. Meyaart about that position beforehand. Not only was Mrs. Meyaart not considered for the role, but her role was changed from reporting directly to the COO to reporting to the new SVP, effectively a demotion. The CEO and the SVP, made the Hotel Division's objective to grow EBITDA from $A to $B but had no clear plan on how to do so.  When Mrs. Meyaart inquired as to how they were expected to make this happen, it was clear Mr. Rodriguez did not have a cogent plan and Mrs. Meyaart was unfairly labeled as a non-team player. This unwarranted disparaging label was repeated later when Mrs. Meyaart was given her review for 2016. A negative statement was included stating that Mrs. Meyaart was perceived as not being a "team player" although she had never received that feedback in any prior review, continuously exceeded goals and had positive reviews from her direct report, peers and executives. After less than one year, Mr. Rodriguez had reduced EBITDA to less than half, re-organized the team into a less effective structure and quadrupled headcount and expenses. Things

13

were so bad that the Board of Directors demanded that Mr. Chacko fire Mr. Rodriguez or be fired himself. Mr. Chacko gave his buddy, Mr. Rodriguez, one year's severance even though he had been there for only about a year. When Mrs. Meyaart was terminated, Travel Leaders Group offered her a small fraction of her annual salary in severance, another glaring example of Travel Leaders Group discriminating against women. Among other anomalies, the same could be said about the fact that Mrs. Meyaart had to pay for her own health benefits whereas there were male executives whose benefits were subsidized.

B.   Although Mrs. Meyaart created the Travel Leaders Group Hotel Division, hired the team, created the hotel programs and grew Hotel Division EBITDA from less than $X to over $Z, Mrs. Meyaart was not given a raise in 5 years.  She was told that she was at the top of the salary band and would not be given a raise.  In Q2 of 2016, Mr. Rodriguez hired a new Director of IT, Patrick O'Neil and a new VP of Marketing, Art Jimenez, each at just $1 less than Mrs. Meyaart's salary.   Both hires were male with no hotel or travel agency experience making as much as Mrs. Meyaart with Mr. O'Neill, a director, being in a less senior role than her.

C.   In the Fall of 2016, after Mr. Rodriguez was fired by Mr. Chacko, Mrs. Meyaart made it expressly clear to Mr. Chacko and Kris Parkin, the head of HR, that Mrs. Meyaart was interested in the SVP role. She was ignored and was never even interviewed for the role. In Q2 of 2017, Mr. Chacko, instead, hired Michael Heflin as SVP (a younger male in his 30's with very little experience), at a compensation level greater than Mrs. Meyaart's. If she had been a male, she would have not have been treated in that fashion;

D. CIO Travel Leaders Group – In September 2016, Mr. Chacko placed Shoeb Ansari (male 40's), who had no relevant travel technology experience; and

E. SVP Strategic Partnerships – On July 24, 2017, ironically around the same day Mrs. Meyaart was fired and told that her position was "eliminated," Mr. Chacko placed David Gross (male 50's) to be Senior VP Strategic Partnerships. That role was never posted. At the same time that Travel Leaders Group was telling Mrs. Meyaart that her position had been eliminated and that there were no other openings in the Company, Travel Leaders Group was actively placing Mr. Gross in a position that Mrs. Meyaart could and should have been considered to fill.

F. While one position was briefly mentioned, where she would report to a Vice President only, even Travel Leaders Group acknowledged it was not worth considering by Mrs. Meyaart at that point. No firm offer was made and no salary was discussed.

G. Mrs. Meyaart asked to be assigned to a position she had outlined, where she would be reporting to Roger Block, but that was not considered.

H. Christina Gambini resigned and Mrs. Meyaart was not even considered for that position.

I. Travel Leaders Group earned a huge amount of revenue, in the many billions of dollars, and surely could have found an appropriate position for Mrs. Meyaart, but somehow couldn't find any that were appropriate to offer her.

56. By the time of Mrs. Meyaart's termination, Mr. Chacko had not hired any female Senior VPs or promoted any females to Senior VP at Travel Leaders Group.

57. Mrs. Meyaart was wrongfully forced out of the Company without cause.

58.     The fiction given to her by Travel Leaders Group, namely, that her position was being eliminated, was a bogus pretext. Travel Leaders Group, including, but not limited to, the Individual Defendants could have and should have found or created another acceptable position for her but did not.

59.     If Mrs. Meyaart was a male, she would not have been terminated.

60.     When she was fired summarily on the spot, she received numerous communications from a number of prominent board members expressing gratitude and praise, as well as shock and disbelief that she had been terminated. It was obvious that Mrs. Meyaart was very highly regarded and liked and yet the Individual Defendants got rid of her nevertheless.

61.     Travel Leaders Group ignored, condoned, and caused various forms of misconduct directed at or inappropriately affecting women, some examples of which, are as follows:

A.      Mr. Lovell solicited Mrs. Meyaart for sex, made lewd comments, leered at her and commented on her appearance repeatedly over the years.  Mrs. Meyaart consistently rejected his passes and direct solicitation for sex.  At some point in early, 2017, it was announced that Mr. Lovell would be taking over the reins of the Hotel Division and thereby become Mrs. Meyaart's more direct boss. On February 7, 2017, Mr. Lovell asked Mrs. Meyaart to meet him at the Boca Beach Club hotel, where he was participating in a golf tournament, and stated that the reason was that he had news regarding her future role in the Hotel Division.  Mr. Lovell arranged for Mrs. Meyaart to meet him in the hotel bar that evening.  After they ordered drinks, Mr. Lovell stated that he was going to be leading the hotel team and that there was a bigger role for Mrs. Meyaart too, leading the overall engagement and inside sales efforts for the Company, not only the hotel division and its products, but for other products being offered by Travel Leaders Group.

Mr. Lovell asked Mrs. Meyaart whether she "was interested." Although he left it vague, Mrs. Meyaart responded that she was interested in the larger role in the Company that he had mentioned. Once the meeting ended, Mr. Lovell walked Mrs. Meyaart out to the valet, when he said hello to an acquaintance who was there for the same golf event.   When the acquaintance asked how he was doing, Mr. Lovell responded in Mrs. Meyaart's presence, that he was "going through another divorce" and that he was "horny." That made Mrs. Meyaart feel incredibly uncomfortable. When Mr. Lovell and Mrs. Meyaart reached the valet and were waiting for her car, Mr. Lovell commented on Mrs. Meyaart's appearance and said she looked "really, really great" while staring at her breasts. She feared that he was going to directly ask her for sex again and she became even more nervous. Mrs. Meyaart was never contacted or considered for the Senior VP, Hotel Division, role. A few weeks later, Mr. Lovell announced that Michael Heflin had been hired as Senior VP of the Hotel Division. The larger role for Mrs. Meyaart never materialized; and

B. In Q4 of 2015, Eric Rodriguez had Mrs. Meyaart's counterpart, Christina Gambini, and Mrs. Meyaart meet with him in Las Vegas to review his plan for reorganizing the team.   At that time, he advised that he was creating a VP of Supplier Relations and Programs role and a VP of Agency Demand role and asked Mrs. Meyaart and Mrs. Gambini which roles they wanted.   Both Mrs. Gambini and Mrs. Meyaart wanted the Supplier Relations and Programs role.  At their dinner meeting, Mrs. Meyaart noticed Mr. Rodriguez becoming flirtatious as he drank.  He suggested they go to the restaurant bar after dinner for a night cap.  As Mr. Rodriguez ordered

more drinks and became more flirtatious, Mrs. Meyaart became uncomfortable so Mrs. Meyaart said goodnight and went to her room leaving Mr. Rodriguez and Mrs. Gambini behind.  The VP Supplier Relations and Programs role was given to Mrs. Gambini shortly afterwards although Mrs. Meyaart had created all of the programs and negotiated their most lucrative supplier contracts.  Later, Mrs. Meyaart came to find out that, after Mrs. Gambini retired to her room, Mr. Rodriguez kept calling her room asking her to come back and join him.

C.  Additional specific "me too" examples shall be provided during this case and as brought to light during discovery and further investigation.

62.    Mrs. Meyaart suffered tangible adverse actions that have affected the terms and conditions of her employment, including, but not limited to, among other things:

A.  Mrs. Meyaart has been punished and suffered adverse employment actions for refusing a direct solicitation for sex from a male superior;

B.  Mrs. Meyaart was subjected to a hostile work environment that favored males and subjected females to constant harassment that was overlooked and ignored by HR despite complaints;

C.  Mrs. Meyaart was never considered or interviewed for openings in the Company (some advertised and others not);

D.  Mrs. Meyaart was never interviewed or considered for openings for which she expressed an interest in being considered;

E.  Mrs. Meyaart was passed over for promotions in favor of unqualified or under-qualified, inexperienced, and unproven males; 2 male SVPs were hired over her even though they had less experience than her; Mrs. Meyaart wasn't even given an opportunity to be interviewed for the position to lead the Division that she had created;

F.  Mrs. Meyaart was not given a raise for over five years despite performance warranting a raise; the male Sr. Director hired in 2016 at a nominal few dollars[4] less than Mrs. Meyaart received a promotion despite a bad peer

---

[4] The actual numbers are redacted at this time.

review, while Mrs. Meyaart had been told that she was maxed out at a nominal few dollars more than him5 in a superior VP position;

G.   Mrs. Meyaart received unwarranted negative comments in connection with her 2016 reviews;

H.   Mrs. Meyaart was not given bonuses despite promises, assurances and performance warranting bonuses;

I.   Unqualified or under-qualified, inexperienced, and unproven males received the same compensation as Mrs. Meyaart;

J.   Mrs. Meyaart was told her position was being eliminated as a pretext for wrongfully terminating her and removing her from the Company without cause;

K.   Mrs. Meyaart was offered limited severance compared to a male who received severance of one year after being with the Company for only a year; and

L.   Mrs. Meyaart's request to be considered for another position within the Company was rebuffed based on a pretext that there were no other positions available when, in fact another male was hired for a position for which Mrs. Meyaart could have been considered.

63.   The actions of the employees of Travel Leaders Group alleged herein occurred within the course and scope of their employment so as to make Travel Leaders Group vicariously liable.

64.   These actions were known to the Board, which overlooked and condoned such behavior and did nothing to prevent, stop or punish such behavior.

65.   Mrs. Meyaart made various complaints to TLG's leadership and HR department but her complaints were ignored and so were the complaints of other women.

66.   The HR department of TLG typically told complaining women to "work things out," "avoid problems," "what do you expect me/us to do about it," and "there's nothing we can do about it."

---

5 The actual numbers are redacted at this time.

67.     The HR Department at TLG was a farcical charade. It's director had little if any formal HR training or experience and had little if any power to ensure compliance with legal requirements or investigate complaints and develop solutions (in fact, in this instance, Mrs. Meyaart demanded that an investigation be conducted and none was ever conducted). Making formal complaints would have been futile. There was no, or inadequate, training of management. Some women feared escalating complaints because they felt their jobs would be in jeopardy, including, but not limited to Mrs. Meyaart. Infractions and non-compliance occurred with impunity because male perpetrators knew they could get away with it with impunity.

68.     Mrs. Meyaart suffered damages as a direct and proximate result of the wrongful actions taken against her, including, but not limited to, loss of her total compensation and benefits (including, but not limited to, her pro rata bonus for calendar year 2017), as well as raises, promotions, bonuses and stock options to which she was or would have become entitled to receive.

69.     All conditions precedent to the filing of this action have been performed, have occurred, or have been excused.

70.     Mrs. Meyaart has retained the law firm of Schwarzberg & Associates and promised to pay it a reasonable fee for attorneys and paralegal services.

## COUNT I
## EQUAL PAY ACT, 29 USC SECTION 206

71.     Mrs. Meyaart re-alleges the General Allegations as if set forth fully herein.

72.      The federal Equal Pay Act, 29 U.S.C. § 206(d)(1) prohibits employers from discriminating between employees on the basis of sex by paying different wages for equal work on jobs the performance of which requires equal skill, effort, and responsibility.

73.     Travel Leaders Group violated the Equal Pay Act because it paid different wages to employees of the opposite sex, including, but not limited to, Mrs. Meyaart.

74.     Travel Leaders Group's employees who were not paid equal pay performed equal work on jobs requiring equal skill, effort, and responsibility, including, but not limited to, Mrs. Meyaart.

75.     At various times during the course of her employment, Mrs. Meyaart performed work equal in skill, effort, and responsibility to the work of certain male employees who were paid higher compensation.

> A. As to skill, Mrs. Meyaart had experience, training, education, and ability comparable to males who were paid more;
>
> B. As to effort, the level of physical and mental exertion required for Mrs. Meyaart to perform her job was comparable to males who were paid more;
>
> C. As to responsibility, the amount of obligation and accountability required for Mrs. Meyaart to perform her job was comparable to that required of males who were paid more; and
>
> D. As to working conditions, Mrs. Meyaart's environment and hazards presented by her job were comparable to those of males who were paid more.

76.     Compared to Mrs. Meyaart, males who performed equal work on comparable jobs requiring equal skill, effort, and responsibility under similar working conditions included, but were not limited to the following:

> A. Peter Vilitas, SVP Airline Relations.
> B. Ron Cerko, SVP Franchise Development
> C. Scott Ackerman,  SVP Product Development
> D. Michael Heflin, SVP, Hotel;
> E. Erick Rodriguez,  SVP Hotel; and
> F. others to be identified

(the "Male Comparators").

77.     The Male Comparators received higher compensation, greater benefits, more perks and enjoyed better working conditions including, but not limited to:

> A. Salary;
> B. Bonuses;
> C. Incentives;
> D. Promotions;

    E.  Insurance coverage (e.g., Mrs. Meyaart paid for all of her healthcare benefits, whereas there were other executives who had their benefits subsidized);

    F.  Vacation and PTO;

    G.  Use of company resources and equipment; and

    H.  Perks, including, but not limited to, things like airline upgrades and other benefits reserved for the "inner circle";

    I.  Support staff; and

    J.  other benefits.

(collectively, "Different Wages").

78.    The Different Wages was based on gender.

79.    Mrs. Meyaart received less of the Different Wages than males for equal work on jobs the performance of which required equal skill, effort, and responsibility.

80.    The actions of Travel Leaders Group constituted a violation of 29 USC206 (d)(1).

81.    Mrs. Meyaart orally complained to her supervisors and the Travel Leaders Group HR department on a number of occasion of the Mistreatment and the Wrongful Actions and her unequal treatment, asserting her rights and demanding a correction, sufficient to inform Travel Leaders Group that Mrs. Meyaart was exerting her rights.

82.    Mrs. Meyaart complained that her pay should reflect her achievement, and at least mirror that of her male colleagues.

83.    Mrs. Meyaart was hired and held out as a Senior Vice President and was assigned and performed the duties of a Senior Vice President.

84.    Adding insult to injury, Travel Leaders Group also hired males with much less experience and lower level duties but paid those males as much or almost as much as Mrs. Meyaart was paid, making Mrs. Meyaart underpaid for the position she held and the duties she performed.

85.    Mrs. Meyaart also complained to Human Resources of the Mistreatment and the Wrongful Actions and of retaliation.

86.     As she was one of the few female Vice President/defacto SVPs, her request for pay parity with her male counterparts, and complaint of retaliation, put Travel Leaders Group on notice that she was asserting her legal rights under federal law.

87.     Travel Leaders Group knew or should have known about the Equal Pay Act and its provisions. One such indication, among others, is that Travel Leaders Group deviously hired a number of male employees who held positions that were inferior to Mrs. Meyaart and who were less experienced and paid them a nominal amount less[6] than Mrs. Meyaart just to try to circumvent the Equal Pay Act specifically.

88.     As a direct and proximate result of Travel Leaders Group's violation of the Equal Pay Act, Mrs. Meyaart suffered damages.

89.     Mrs. Meyaart is entitled to recover her compensatory and well as her liquidated damages.

90.     Travel Leaders Group recklessly disregarded the Equal Pay Act, such that Mrs. Meyaart is entitled to entry of an award of punitive damages.

91.     Travel Leaders Group acted intentionally and knowingly sufficient to justify the application of an extended three-year statute of limitations.

**WHEREFORE**, Mrs. Meyaart demands judgments for damages in the form of back pay and such amount as the Courts finds Mrs. Meyaart has been lawfully underpaid, liquidated damages in an amount equal to her actual damages, reasonable attorneys' fees pursuant to 29 USC 216 (b), punitive damages and such other relief as this Court deems appropriate.

**COUNT II**
**FL.STAT. SECTION 725.07,**
**DISCRIMINATION ON BASIS OF SEX, MARITAL STATUS, OR RACE FORBIDDEN**

92.     Mrs. Meyaart re-alleges the General Allegations as if set forth fully herein.

---

[6] The actual numbers are redacted at this time.

93.     Florida Statute Section 725.07 ("Florida's Equal Pay Act") provides:

(1)   No person, as defined in s. 1.01(3) shall discriminate against any person
based on sex, marital status, or race in the areas of loaning money, granting credit,
or providing equal pay for equal services performed.
(2)   Any violation of this section may be brought in the courts of this state by the
individual upon whom the discrimination has been perpetrated in a civil action,
and said individual shall be entitled to collect, not only compensatory damages,
but, in addition thereto, punitive damages and reasonable attorney fees for a
violation of this section.

94.     Travel Leaders Group violated Florida's Equal Pay Act because it discriminated

against Mrs. Meyaart based on her sex, female, as compared to males.

95.     Mrs. Meyaart was not paid equal pay for performing equal work on jobs requiring

equal skill, effort, and responsibility.

96.     At various times during the course of her employment, Mrs. Meyaart performed

work equal in skill, effort, and responsibility to the work of certain male employees who were paid

higher compensation.

   A.   As to skill, Mrs. Meyaart had experience, training, education, and ability
        comparable to males who were paid more;

   B.   As to effort, the level of physical and mental exertion required for Mrs.
        Meyaart to perform her job was comparable to males who were paid more;

   C.   As to responsibility, the amount of obligation and accountability required
        for Mrs. Meyaart to perform her job was comparable to that required of
        males who were paid more; and

   D.   As to working conditions, Mrs. Meyaart's environment and hazards
        presented by her job were comparable to those of males who were paid
        more.

97.     Compared to Mrs. Meyaart, males who performed equal work on comparable jobs

requiring equal skill, effort, and responsibility under similar working conditions included, but were

not limited to the following:

   A.   Peter Vilitas, SVP Airline Relations.
   B.   Ron Cerko, SVP Franchise Development
   C.   Scott Ackerman,  SVP Product Development
   D.   Michael Heflin, SVP, Hotel;

    E.  Erick Rodriguez,  SVP Hotel; and

    F.  others to be identified

(the "Male Comparators").

98.    The Male Comparators received higher compensation, greater benefits, more perks

and enjoyed better working conditions including, but not limited to:

    A.  Salary;
    B.  Bonuses;
    C.  Incentives;
    D.  Promotions;
    E.  Insurance coverage (e.g., Mrs. Meyaart paid for all of her healthcare benefits, whereas there were other executives who had their benefits subsidized);
    F.  Vacation and PTO;
    G.  Use of company resources and equipment; and
    H.  Perks, including, but not limited to, things like airline upgrades and other benefits reserved for the "inner circle";
    I.  Support staff; and
    J.  other benefits.

(collectively, "Different Wages").

99.    The Different Wages was based on gender.

100.    Mrs. Meyaart received less of the Different Wages than males for equal work on jobs the performance of which required equal skill, effort, and responsibility.

101.    The actions of Travel Leaders Group constituted a violation of  the Florida's Equal Pay Act.

102.    Mrs. Meyaart orally complained to her supervisors and the Travel Leaders Group HR department on a number of occasion of the Mistreatment and the Wrongful Actions and her unequal treatment, asserting her rights and demanding a correction, sufficient to inform Travel Leaders Group that Mrs. Meyaart was exerting her rights.

103.    Mrs. Meyaart complained that her pay should reflect her achievement, and at least mirror that of her male colleagues.

104.    Mrs. Meyaart was hired and held out as a Senior Vice President and was assigned and performed the duties of a Senior Vice President.

105.    Adding insult to injury, Travel Leaders Group also hired males with much less experience and lower level duties but paid those males as much or almost as much as Mrs. Meyaart was paid, making Mrs. Meyaart underpaid for the position she held and the duties she performed.

106.    Mrs. Meyaart also complained to Human Resources of Mistreatment and the Wrongful Actions and of retaliation.

107.    As she was one of the few female Vice President/defacto SVPs, her request for pay parity with her male counterparts, and complaint of retaliation, put Travel Leaders Group on notice that she was asserting her legal rights under Florida law.

108.    Travel Leaders Group knew or should have known about the Florida's Equal Pay Act and its provisions. One such indication, among others, is that Travel Leaders Group deviously hired a number of male employees who held positions that were inferior to Mrs. Meyaart and who were less experienced and paid them a nominal amount less[7] than Mrs. Meyaart just to try to circumvent the Florida's Equal Pay Act specifically.

109.    As a direct and proximate result of Travel Leaders Group's violation of the Florida's Equal Pay Act, Mrs. Meyaart suffered damages.

110.    Mrs. Meyaart is entitled to recover her compensatory and punitive damages and attorneys' fees.

111.    Travel Leaders Group knowingly, intentionally, maliciously and recklessly disregarded the Florida's Equal Pay Act, such that Mrs. Meyaart is entitled to entry of an award of punitive damages.

---

[7] The actual numbers are redacted at this time.

**WHEREFORE**, Mrs. Meyaart demands judgments for damages in the form of back pay and such amount as the Courts finds Mrs. Meyaart has been lawfully underpaid, punitive damages, reasonable attorneys' fees and such other relief as this Court deems appropriate.

**COUNT III**
**NEGLIGENT RETENTION**

112.    Mrs. Meyaart re-alleges the General Allegations as if fully set forth herein.

113.    Travel Leaders Group owed a duty of care to Mrs. Meyaart not to subject her to the negligent careless treatment from other co-employees, in this case, the employees about whom she complained concerning their involvement in committing the Mistreatment and Wrongful Actions or their condoning, acquiescing or ratifying the Mistreatment and Wrongful Actions, including, but not limited to, Mr. Chacko and Mr. Lovell.

114.    Numerous complaints had been made against Mr. Chacko and Mr. Lovell, before any adverse employment actions had been imposed against Mrs. Meyaart. Those complaints concerned: a) their involvement in committing the Wrongful Actions; b) their condoning, acquiescing or ratifying the Wrongful Actions; c) their involvement in, and condoning, violations by Travel Leaders Group of various laws, rules and regulations; and d) their mistreatment of, and wrongful conduct toward, female employees of Travel Leaders Group.

115.    Travel Leaders Group including, but not limited to, its Board of Directors, knew, or should have known, of or about the complaints that had been made against Mr. Chacko and Mr. Lovell.

116.    Both Mr. Chacko and Mr. Lovell played a pivotal role in the imposition of adverse employment actions against Mrs. Meyaart.

117.    Mr. Chacko harbored resentment toward Mrs. Meyaart, in part, because members of the Board had asked her input on someone who was a personal friend of his who Mr. Chacko hired and Mr. Chacko was told that either he had to fire that friend or be fired himself. Members

of the Board knew or should have known that Mr. Chacko hired and protected less- or unqualified male friends to the disadvantage of females such as Mrs. Meyaart.

118.    Mr. Lovell harbored resentment toward Mrs. Meyaart, in part, because she had rebuffed his prior sexual advances and was otherwise unresponsive to him and his overtures and solicitations.

119.    Both Mr. Chacko and Mr. Lovell acted solely out of malice in tortiously interfering with the advantageous business relationship between Travel Leaders Group and Mrs. Meyaart when they failed to take action and in other instances when they took action adverse to the employment interests of Mrs. Meyaart, including, but not limited to, the Wrongful Actions and, ultimately, her termination.

120.    Travel Leaders Group knew or should have known of Mr. Chacko's and Mr. Lovell's unfitness and it failed to take any action related to them, including, but not limited to, investigating, discharging or re-assignment.

121.    Travel Leaders Group breached the duty of care owed to Mrs. Meyaart in that Travel Leaders Group knew or should have known that Mr. Chacko and Mr. Lovell would subject Mrs. Meyaart to adverse employment actions based on discrimination, harassment, hostile work environment, retaliation, the Objections, violation of the Equal Pay Act, and other reasons.

122.    Members of the Board, who knew better, sat by indifferently and apathetically, and permitted the Wrongful Actions to occur when they knew or should have known that Mrs. Meyaart would become victimized repeatedly.

123.    Travel Leaders Group's breach of the duty of care caused Mrs. Meyaart to suffer damages, including, but not limited to adverse employment actions, including, but not limited to, termination, and severe emotional distress.

124.    Travel Leaders Group's actions were careless in the retention of Mr. Chacko and Mr. Lovell and fell below the standard of care expected of employers in a similar position.

125.   The toxic environment that permeated Travel Leaders Group that caused or facilitated the Wrongful Actions were known, or should have been known, by Travel Leaders Group and its officers and Board of Directors.

126.   Travel Leaders Group was aware of the numerous complaints and deficiencies at Travel Leaders Group, and with regard to Mr. Chacko and Mr. Lovell specifically, and did nothing to protect Mrs. Meyaart from Mr. Chacko and Mr. Lovell.

127.   Travel Leaders Group knew or should have known that Mr. Chacko and Mr. Lovell had been negligently retained.

128.   Mrs. Meyaart suffered economic damages as a direct and proximate result thereof.

129.   Travel Leaders Group's actions were grossly negligent so as to justify the imposition of punitive damages.

**WHEREFORE,** Mrs. Meyaart respectfully requests this Honorable Court to enter in her favor a judgment against Travel Leaders Group for damages, interest and costs, and any other and further relief that this Honorable Court deems just and proper, including, but not limited to, an award of punitive damages.

## <u>COUNT IV</u>
## <u>TORTIOUS INTERFERENCE</u>

130.   Mrs. Meyaart re-alleges the General Allegations as if fully set forth herein.

131.   Mr. Chacko and Mr. Lovell were supervisors and superior to Mrs. Meyaart and they played a substantial role in the adverse employment actions she suffered, including, but not limited to, her termination.

132.   Mr. Chacko and Mr. Lovell directly, intentionally and unjustifiedly interfered with the advantageous business relationship between Mrs. Meyaart and Travel Leaders Group and, as a direct and proximate result thereof, Mrs. Meyaart suffered damages.

133.    Both Mr. Chacko and Mr. Lovell played a pivotal role in the imposition of adverse employment actions against Mrs. Meyaart.

134.    Mr. Chacko harbored resentment toward Mrs. Meyaart, in part, because members of the Board had asked her input on someone who was a personal friend of his who Mr. Chacko hired and Mr. Chacko was told that either he had to fire that friend or be fired himself. Members of the Board knew or should have known that Mr. Chacko hired and protected less- or unqualified male friends to the disadvantage of females such as Mrs. Meyaart.

135.    Mr. Lovell harbored resentment toward Mrs. Meyaart, in part, because she had rebuffed his prior sexual advances and was otherwise unresponsive to him and his overtures and solicitations.

136.    Mr. Chacko's and Mr. Lovell's actions were conducted solely out of malice and for an ulterior motive that was not in the best interest of Travel Leaders Group, including, but not limited to, Mr. Chacko punishing Mrs. Meyaart for communicating directly with Board members at their request about operations, punishing Mrs. Meyaart for rejecting solicitations for sex, and preventing Mrs. Meyaart from continuing to object and make her Objections.

137.    Mr. Chacko and Mr. Lovell's actions were so willful, wanton and malicious so as to justify the imposition of punitive damages for which Mrs. Meyaart reserves the right to make a statutory showing so that her pleadings may be amended accordingly.

**WHEREFORE,** Mrs. Meyaart respectfully requests this Honorable Court to enter in her favor a judgment against Mr. Chacko and Mr. Lovell, jointly and severally, for damages, interest and costs, and any other and further relief that this Honorable Court deems just and proper including, but not limited to, punitive damages.

### COUNT V
### GENDER DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED AND 42 U.S.C. §§ 2000e et seq.

138.    Mrs. Meyaart re-alleges the General Allegations and paragraphs 72-91 as if fully set forth herein.

139.    TLG has discriminated against Mrs. Meyaart on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., by subjecting her to disparate treatment based upon her gender, including, but not limited to, denying her equal terms and conditions of employment, and subjecting her to disparate working terms and conditions while Mrs. Meyaart was working for Travel Leaders Group.

140.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., Mrs. Meyaart has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

141.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., Mrs. Meyaart has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

142.    Travel Leaders Group violated the rights of Mrs. Meyaart under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., in numerous ways including, but not limited to the Wrongful Actions and by:

       A.    failing to investigate her complaints;

       B.    failing to investigate her complaints timely;

       C.    failing to take reasonable steps to handle and/or resolve her complaints;

       D.    giving her unwarranted negative performance reviews;

       E.    intimidating, threatening and maligning her;

       F.    subjecting her to a hostile work environment;

       G.    taking other adverse employment actions against her; and

      H.     retaliating against her.

143.    Travel Leaders Group's discrimination against Mrs. Meyaart caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

144.    Travel Leaders Group's actions in discriminating against Mrs. Meyaart as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Mrs. Meyaart's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

145.    Travel Leaders Group violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and discriminated against Mrs. Meyaart based on her gender by subjecting Mrs. Meyaart to Travel Leaders Group's Wrongful Actions and other actions based on Mrs. Meyaart's gender, and were taken either as pretexts to discrimination or as a result of Travel Leaders Group's mixed motives, at least one of which was discrimination.

146.    Travel Leaders Group's discrimination caused Mrs. Meyaart to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

WHEREFORE, Mrs. Meyaart respectfully requests that the Court enter judgment in her favor and award her the following relief:

      A.     An Order declaring that Travel Leaders Group violated her civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* and restraining and enjoining Travel Leaders Group from further such violations;

      B.     Back pay, front pay, and other benefits lost as a result of Mrs. Meyaart unlawfully being discriminated against;

C.      Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Travel Leaders Group's unlawful actions;

D.      Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.      The attorneys' and paralegal's fees and costs incurred by Mrs. Meyaart; and

F.      Such other relief as may be just and appropriate.

## <u>COUNT VI</u>
## <u>HOSTILE ENVIRONMENT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED AND 42 U.S.C. §§ 2000e et seq.</u>

147.    Mrs. Meyaart incorporates the General Allegations and paragraphs 72-91, as though fully set forth here.

148.    Travel Leaders Group's actions amounted to a hostile work environment against Mrs. Meyaart which caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

149.    Travel Leaders Group's actions in creating a hostile work environment against Mrs. Meyaart as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Mrs. Meyaart's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

150.    Travel Leaders Group violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and created a hostile work environment against Mrs. Meyaart due to her gender by subjecting Mrs. Meyaart to Travel Leaders Group's Wrongful Actions and

other actions based on Mrs. Meyaart's gender, female, and were taken either as pretexts to discrimination or as a result of Travel Leaders Group's mixed motives, at least one of which was discrimination.

151.    Travel Leaders Group's creation of a hostile work environment caused Mrs. Meyaart to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

WHEREFORE, Mrs. Meyaart respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.    An Order declaring that Travel Leaders Group violated her civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* and restraining and enjoining Travel Leaders Group from further such violations;

B.    Back pay, front pay, and other benefits lost as a result of Mrs. Meyaart unlawfully being subjected to a hostile work environment;

C.    Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Travel Leaders Group's unlawful actions;

D.    Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.    The attorneys' and paralegal's fees and costs incurred by Mrs. Meyaart; and

F.    Such other relief as may be just and appropriate.

## COUNT VII
## RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED AND 42 U.S.C. §§ 2000e et seq.

152.    Mrs. Meyaart incorporates the General Allegations and paragraphs 72-91, as though fully set forth here.

153.    Mrs. Meyaart complained of the Mistreatment and the Wrongful Actions and Mr. Lovell's offensive and inappropriate behavior, which was well-known in the Company.

154.    Despite Mrs. Meyaart's complaints about Mr. Lovell, and what was known about him, he was permitted to remain her supervisor, who would ultimately decide whether Mrs. Meyaart would be promoted.

155.    Mrs. Meyaart was ultimately denied and/or not considered for several promotions, decisions over which Mr. Lovell maintained a leadership role and was intricately involved, and through which Mr. Lovell retaliated against Mrs. Meyaart for having complained about his inappropriate and unlawful conduct and for having rebuffed his solicitations.

156.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., Mrs. Meyaart has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

157.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., Mrs. Meyaart has suffered, and continues to suffer, severe mental anguish and emotional distress to which she is entitled to an award of monetary damages and other relief.

158.    Travel Leaders Group's actions, and failures to act, including, but not limited to her termination, amounted to retaliation against Mrs. Meyaart which caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

159.    Travel Leaders Group's actions in retaliating against Mrs. Meyaart as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Mrs. Meyaart's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

160.    Travel Leaders Group violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and retaliated against Mrs. Meyaart due to her gender by subjecting Mrs. Meyaart to Travel Leaders Group's actions based on Mrs. Meyaart's gender, and were taken either as pretexts to discrimination or as a result of Travel Leaders Group's mixed motives, at least one of which was discrimination.

161.    Travel Leaders Group's retaliation caused Mrs. Meyaart to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

162.    In taking the foregoing actions, Travel Leaders Group subjected Mrs. Meyaart to a severe and pervasive and/or materially adverse hostile work environment.

163.    Travel Leaders Group's actions were based on reprisal and were taken either as pretexts to retaliation or as a result of Travel Leaders Group's mixed motives, at least one of which was retaliation, for Mrs. Meyaart's engagement in activity protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. Travel Leaders Group's actions would likely have dissuaded a reasonable employee from making or supporting a complaint of discrimination.

WHEREFORE, Mrs. Meyaart respectfully requests that the Court enter judgment in her favor and award her the following relief:

      A.    An Order declaring that Travel Leaders Group violated her civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and restraining and enjoining Travel Leaders Group from further such violations;

B.      Back pay, front pay, and other benefits lost as a result of Mrs. Meyaart unlawfully being subjected to a hostile work environment;

C.      Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Travel Leaders Group's unlawful actions;

D.      Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.      The attorneys' and paralegal's fees and costs incurred by Mrs. Meyaart; and

F.      Such other relief as may be just and appropriate.

## COUNT VIII
## GENDER DISCRIMINATION UNDER CHAPTER 760, FLORIDA CIVIL RIGHTS ACT

164.    Mrs. Meyaart re-alleges the General Allegations and paragraphs 72-91, as if fully set forth herein.

165.    TLG has discriminated against Mrs. Meyaart on the basis of her gender in violation of Florida Civil Rights Act, Chapter 760, by subjecting her to disparate treatment based upon her gender, including, but not limited to, denying her equal terms and conditions of employment, and subjecting her to disparate working terms and conditions while Mrs. Meyaart was working for Travel Leaders Group.

166.    As a direct and proximate result of Defendants' unlawful discriminatory conduct Mrs. Meyaart has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

167.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Mrs. Meyaart has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

168.    Travel Leaders Group violated the rights of Mrs. Meyaart, in numerous ways including:

      A.     failing to investigate her complaints;

      B.     failing to investigate her complaints timely;

      C.     failing to take reasonable steps to handle and/or resolve her complaints;

      D.     giving her unwarranted negative performance reviews;

      E.     intimidating, threatening and maligning her;

      F.     subjecting her to a hostile work environment;

      G.     taking other adverse employment actions against her; and

      H.     retaliating against her.

169.    Travel Leaders Group's discrimination against Mrs. Meyaart caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

170.    Travel Leaders Group's actions in discriminating against Mrs. Meyaart as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Mrs. Meyaart's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

171.    Travel Leaders Group violated Florida Civil Rights Act, Chapter 760, and discriminated against Mrs. Meyaart based on her gender by subjecting Mrs. Meyaart to Travel Leaders Group's actions based on Mrs. Meyaart's gender, and were taken either as pretexts to discrimination or as a result of Travel Leaders Group's mixed motives, at least one of which was discrimination.

172.    Travel Leaders Group's discrimination caused Mrs. Meyaart to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

WHEREFORE, Mrs. Meyaart respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.    An Order declaring that Travel Leaders Group violated her civil rights under Florida Civil Rights Act, Chapter 760, and restraining and enjoining Travel Leaders Group from further such violations;

B.    Back pay, front pay, and other benefits lost as a result of Mrs. Meyaart unlawfully being discriminated against;

C.    Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Travel Leaders Group's unlawful actions;

D.    Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.    The attorneys' and paralegal's fees and costs incurred by Mrs. Meyaart; and

F.    Such other relief as may be just and appropriate.

## COUNT IX
## HOSTILE ENVIRONMENT UNDER CHAPTER 760, FLORIDA CIVIL RIGHTS ACT

173.    Mrs. Meyaart incorporates the General Allegations and paragraphs 72-91, as though fully set forth here.

174.    Travel Leaders Group's actions amounted to a hostile work environment against Mrs. Meyaart which caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

175.    Travel Leaders Group's actions in creating a hostile work environment against Mrs. Meyaart as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Mrs. Meyaart's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

176.    Travel Leaders Group violated Florida Civil Rights Act, Chapter 760, and created a hostile work environment against Mrs. Meyaart due to her gender by subjecting Mrs. Meyaart to Travel Leaders Group's actions based on Mrs. Meyaart's gender, female, and were taken either as pretexts to discrimination or as a result of Travel Leaders Group's mixed motives, at least one of which was discrimination.

177.    Travel Leaders Group's creation of a hostile work environment caused Mrs. Meyaart to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

WHEREFORE, Mrs. Meyaart respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.    An Order declaring that Travel Leaders Group violated her civil rights under Florida Civil Rights Act, Chapter 76, and restraining and enjoining Travel Leaders Group from further such violations;

B.    Back pay, front pay, and other benefits lost as a result of Mrs. Meyaart unlawfully being subjected to a hostile work environment;

C.      Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Travel Leaders Group's unlawful actions;

D.      Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.      The attorneys' and paralegal's fees and costs incurred by Mrs. Meyaart; and

F.      Such other relief as may be just and appropriate.

### COUNT X
### RETALIATION UNDER CHAPTER 760, FLORIDA CIVIL RIGHTS ACT

178.    Mrs. Meyaart incorporates the General Allegations and paragraphs 72-91, as though fully set forth here.

179.    Mrs. Meyaart complained of Mr. Lovell's offensive and inappropriate behavior, which was well-known in the Company.

180.    Despite Mrs. Meyaart's complaints about Mr. Lovell, and what was known about him, he was permitted to remain her supervisor, who would ultimately decide whether Mrs. Meyaart would be promoted.

181.    Mrs. Meyaart was ultimately denied and/or not considered for several promotions, decisions over which Mr. Lovell maintained a leadership role and was intricately involved, and through which Mr. Lovell retaliated against Mrs. Meyaart for having complained about his inappropriate and unlawful conduct and for having rebuffed his solicitations.

182.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Florida Civil Rights Act, Chapter 760, Mrs. Meyaart has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

183.    As a direct and proximate result of Defendants' unlawful retaliatory conduct Florida Civil Rights Act, Chapter 760, Mrs. Meyaart has suffered, and continues to suffer, severe mental anguish and emotional distress to which she is entitled to an award of monetary damages and other relief.

184.    Travel Leaders Group's actions, and failures to act, including, but not limited to her termination, amounted to retaliation against Mrs. Meyaart which caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

185.    Travel Leaders Group's actions in retaliating against Mrs. Meyaart as alleged herein were egregious and taken in conscious disregard of or with deliberate indifference to Mrs. Meyaart's rights outrageously, wantonly, and oppressively, and with legal and actual malice.

186.    Travel Leaders Group violated Florida Civil Rights Act, Chapter 760, and retaliated against Mrs. Meyaart due to her gender by subjecting Mrs. Meyaart to Travel Leaders Group's actions based on Mrs. Meyaart's gender, and were taken either as pretexts to discrimination or as a result of Travel Leaders Group's mixed motives, at least one of which was discrimination.

187.    Travel Leaders Group's retaliation caused Mrs. Meyaart to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

188.    In taking the foregoing actions, Travel Leaders Group subjected Mrs. Meyaart to a severe and pervasive and/or materially adverse hostile work environment.

189.    Travel Leaders Group's actions were based on reprisal and were taken either as pretexts to retaliation or as a result of Travel Leaders Group's mixed motives, at least one of which was retaliation, for Mrs. Meyaart's engagement in activity protected under Florida Civil Rights Act, Chapter 760, Travel Leaders Group's actions would likely have dissuaded a reasonable employee from making or supporting a complaint of discrimination.

WHEREFORE, Mrs. Meyaart respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.    An Order declaring that Travel Leaders Group violated her civil rights under Florida Civil Rights Act, Chapter 760, and restraining and enjoining Travel Leaders Group from further such violations;

B.    Back pay, front pay, and other benefits lost as a result of Mrs. Meyaart unlawfully being subjected to a hostile work environment;

C.    Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by Travel Leaders Group's unlawful actions;

D.    Record correction to remove the negative performance appraisals from her personnel file and replace it with one rating her at the "Exceeds Expectations" level in each performance area or a substantially similar correction;

E.    The attorneys' and paralegal's fees and costs incurred by Mrs. Meyaart; and

F.    Such other relief as may be just and appropriate.

## JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**.

## <u>CERTIFICATE OF SERVICE</u>

**WE DO HEREBY CERTIFY** that on July 12, 2018, a true and correct copy of the foregoing was filed using the Court's CM/ECF System, which will send a notice of electronic filing to the all counsel of record identified on the service list below.

SCHWARZBERG & ASSOCIATES
*Attorneys for Plaintiff, Mrs. Meyaart*
2751 South Dixie Highway, Suite 400
West Palm Beach, FL 33405
Telephone:     (561) 659-3300
Facsimile:     (561) 693-4540

By: ***Steven L. Schwarzberg***
STEVEN L. SCHWARZBERG
Florida Bar No. 0306134
steve@schwarzberglaw.com
mail@schwarzberglaw.com

## <u>SERVICE LIST</u>

Cheryl L. Wilke, Esq.
Hinshaw & Culbertson LLP
One East Broward Boulevard, Suite 1010
Ft. Lauderdale, FL 33301
*Counsel for Travel Leaders Group, LLC*

Kelly B. Holbrook, Esq.
Lisa Griffin Hodgdon, Esq.
Broad and Cassel LLP
100 North Tampa Street, Suite 3500
Tampa, Florida 33602
*Counsel for Ninan Chacko and John Lovell*